The next matter, number 23-1214, Cynthia Foss v. Marvic, Incorporated, et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. I may please report. Gregory Keenan, appearing on behalf of Appellant Foss. I'd like to reserve three minutes if I may. You may. Thank you, your honor. At court, this case presents two central issues. First, there's a question of whether a Section 411A dismissal for lack of registration has preclusive effect. The answer is no, because such a dismissal is not on the merits, but rather akin to an administrative exhaustion requirement. Such a dismissal does not bar a subsequent refiling after a correction of that procedural defect, i.e., here in the case of a 411A dismissal after registration is procured. Second, this appeal asks whether charter selection of materials when throttling and prioritizing materials flowing through its network violates Section 512A2's requirements for the conditional safe harbor provided by Section 512's Internet Service Providers. It's critical that Congress pass Section 512 to render immune from copyright liability ISPs that are operating as passive conduits. Here, charter, by making deep packet inspection of the materials flowing through its system, making selection of the materials when transmitting and routing those materials through its system via its throttling behaviors, prioritization behaviors, are all the types of technical selections. If you want, you can choose how you want to do the argument. But could you start on the other claim and the effect of the registration? The registration? The preclusion issue. Of course, Your Honor. Happy to. So one of the elements of clear preclusion is that it requires a final judgment. I guess I'll just cut to the chase. Your opponent says we can affirm in part based on what they refer to as the prejudice, not the with prejudice question, but the unfairness or the harm that came to them, even notwithstanding Eastern states, because Eastern states left that open. What's your response to that? There would be two responses. So first, that was not the basis of the decision below. Below, the Court said that because it was labeled with prejudice, that the dismissal had preclusive effect and we think a host of authorities demonstrate that's error, most recently Eastern states. Secondly, we would respectfully disagree that the type of prejudice that they're pointing to would qualify for the type of exception that's referenced in the footnotes in Piznoy, I believe it is, and Eastern states leaving open the possibility that in some circumstances there might be a world in which there's some prejudice that would somehow transform a 411 dismissal into an on-the-merits dismissal. The basis for that purported exception, and importantly, Piznoy is talking about it in the context of state preclusion law as opposed to federal preclusion law. The purported basis for that exception is Stebbins and then comment end of Section 20 of the restatement. So critically, again, we don't think the district court based its ruling. If there's any evidence that they identified. Do we know how we would review? Let's say there is such a prejudice thing. Would that be reviewed for abuse of discretion? If the district court itself makes a finding that it's preclusive even though it's a precondition to sue because of the prejudice? Would that be reviewed for abuse of discretion or de novo? Because I know that comment N refers to estoppel. And estoppel, I think, we review for abuse of discretion. Comment N does, but then comment D, importantly, says that in jurisdictions it references comment N. And comment D restricts the scope and effect of comment N saying in jurisdictions where there's the equivalent of FRCP 41, that claim preclusion would still bar the action. And so I think that would be a legal error. But assuming you could get past that, but even I guess what I'm getting at is if the ground is based on something like an estoppel notion per comment N, and review is for abuse of discretion, I guess in the absence of an exercise of that discretion, it would be hard to affirm. Not that you would disagree with that, I assume. I would not disagree with that, of course. Yes. So what's your view, for example, there were adjudications made in the first lawsuit based on the effect of responses to admissions, based on the state law claims being adjudicated. What happens to those rulings under your view? Those rulings as to the state law claims and those rulings as to the admissions. Yes. Would be unaffected by the claim preclusive issues surrounding Section 411A's dismissal of the federal copyright claims. So you could not relitigate the state law claims. That's right. And you would be bound by the holding that you had admitted such and such, your client had admitted such and such. That's correct, Your Honor. And then the sort of pure case is someone pleads a copyright claim, and then the defendant comes in and says, you never even applied for a copyright, so case dismissed, and it gets dismissed. And the law is pretty clear that would be no preclusion on refiling the copyright claim post-registration or post-decision on registration. This case is a little different, though, and as I understand it, your client affirmatively alleged that she had applied for copyright registration. And I think there's a suggestion that that was false. In the appellate briefing of the other side, yeah. One of the things is that the – Well, it wasn't – had she applied? Yes, she had applied. So she applied, but the Copyright Office told her that it was an incomplete application, so then she corrected the application. Here's what I'm not following. January 19th is the complaints file where she says she applied. Had she applied prior to January 19th? I believe she had submitted an incomplete application. And then when she refers to the applications filed on February 18th and – is it March 18th? No, February 18th, February 28th, and then there's March 18th. Those three are independent of the one that was filed before January 19th? I think the third one was independent. There was a – I guess what I'm saying, were there four applications or three? I believe there were three as to this copy. Then what I'm not understanding is how could there have been an application before January 19th? Because the three that are referenced by her own account are February 18th, February 28th, and then the corrected application on March 18th. But she filed on January 19th saying she had applied. I'm sorry, I don't actually have the answer in front of me to that, but I wouldn't – I would just press the legal significance of that. It still wouldn't change that the 411A – Well, it might go to the prejudice point if this was a case in which a person had – she had every reason to know you at least had to apply, and yet if she started a lawsuit when she hadn't even applied and represented she had applied. Now, I don't know how that – I mean, a misrepresentation like that, I don't know how to even think about what we're supposed to do. There's no finding on that. It's a 12B6 motion, so we take the complaint as true. I mean, there's lots of – it's just a curious feature of the case is that they're saying to us she hadn't even applied. Then the record shows there's these three applications, but all of those applications post-date the January 19th complaint in which she said she had applied by January 19th. I would just stress the fact that that wasn't the basis of the ruling below or the dismissal. Also, I would respectfully disagree that she had every reason to know that she had to apply, in part because throughout litigation she was at times operating pro se. But no one's saying she had a reason to know she had to apply. The statement is she had a reason to know whether she'd applied. Oh, I'm sorry. I apologize. I see. I understand now. Sorry. On that issue, I'd just reiterate that wasn't the basis of the ruling below. I don't think that would constitute on its own the type of prejudice that would – I mean, I wouldn't know how to review it either in the absence of an evaluation of that, but I'm not sure that that would constitute the type of prejudice, just standing alone. And in that litigation, I take it once it became manifest through her filings, that she had made applications on the 18th and the 28th and never had said anything about the 19th. There was no motion for sanctions or anything like that contesting her behavior in the filing on January 19th. That's right. On your claim against Charter, it strikes me that what you're doing is you're asking the Court to rule that Charter cannot raise a defense that Charter has no intention of raising or has ever indicated it's going to raise to a lawsuit that you have never filed against it. I would respectfully disagree with that. And what's wrong with that? So at least two things. So the first one is that we would argue that they have, in fact, raised the defense when they filed their – by virtue of Rule 12 when they filed a motion to dismiss, arguing that 512 protections and safe harbors, quote, you know, foreclosed our theory. And the second is that we did allege copyright infringement against them for the same reason that there is a concrete case against the Marvick defendants, so too against the Charter defendants. In fact, the very first sentence of the opinion says the amended complaint brought violation claims of violations of 106 against all the defendants. There's factual allegations of the same concrete harms and concrete infringements. We have – our case is a case for copyright infringement against Charter. We've alleged specific acts of infringement against specific copyrights. It's the exact same violations of the same rights and same copyrights. But the only relief you asked for against Charter is an adjudication that they don't have a certain defense. Which we would argue is just a remedy that's selected under the Declaratory Judgment Act, that the availability of other remedies but not opting for them doesn't foreclose the right to select a different remedy. So if I have a contract against someone and I think they may have a certain defense that they're not raising, I could file a Declaratory Judgment Action asking the court not to declare that there's been a breach, not to declare there's been no breach, but to declare that if there were a claim of breach, there would not be a certain defense? There's – can I answer the question? In some cases, such as Cowell, I believe it is, the 1945 case, their defense hadn't been asserted, but also what was important was the claim was a contract claim and then the party asked for a declaratory judgment about the constitutionality of some act that the harm didn't trace back to. So if, for example, we sue Charter for copyright infringement and then ask for a declaration of an unrelated trademark defense, there would be an Article III problem there. But here there's a specific case in controversy surrounding copyright. There's infringement claims about copyright and we're just asking for – Is there any limit to – I mean, I understand you agree that if we don't read the complaint to have raised the copyright claim, then there's an Article III problem. To get in the door for there to be an Article III basis for us to adjudicate the defense, you at least have to have pled the copyright claim. Are you saying that – I don't think that's true under MedImmune, but I would say that we did plead it and Shelby v. Johnson would indicate why that would – If you – Is there any limit to the defenses that you can ask the court before it's heard from anybody else to adjudicate? The defense would have to be that there's Article III standing because there's an actual controversy that has occurred. And how would the court know at the time you request it to answer the question whether – did you ask for the declaratory judgment on that question only after they moved to dismiss it based on 512? No, we filed the complaint that laid out factual allegations setting forth a concrete controversy that satisfied – But what I'm saying is, is there any limit then to the number of defenses you could imagine could be brought against you that you could ask the district court to adjudicate in advance of anybody having brought them? Your view is no, right? Well, the limit would, of course, be – I think the limit would be Article III, but it would be, for example – I mean, actual – any actual defense to the case, you could have adjudicated up front through declaratory judgment without the other party having even said that they were going to raise it, correct? That's your view. Provided there's a concrete controversy and that that controversy and the concrete harms do – How can there be a controversy if they've never raised the issue? MedImmune, the – there was an actual threat to bring patent litigation, so someone – classic sort of Damocles hanging over me, and I want to declare it to our judgment action that that sword should be moved over here. Here, there's nothing that they said at all to you or your client about this defense before you just file a case saying, Court, tell them they don't have a defense. I would just reiterate, our reading of MedImmune is that because Article III is satisfied here and because there's – this isn't a type of case such as where there's no specified copyrights that are ruling on some hypothetical harm. The request for a remedy that's asking for declaration about the defense arising under the Copyright Act is just a partial remedy. Let me just ask, suppose they responded to that declaratory judgment action by saying we're not going to bring that defense. At that point, is there Article III standing? That would present a much more difficult question. And what's the answer to the difficult question? If they had just filed a jurisdictional motion. They respond. They say that there's no jurisdiction over the question. We're not bringing that defense. Is there still jurisdiction to hear it? I believe under MedImmune there would be, but our theory doesn't rely on that. What would be the adversity in that circumstance? It would be the same adversity. So I guess what's really important when looking at both by the rationale of MedImmune and also the specific language of the Declaratory Judgment Act is we have to keep two things separate. One is Article III and are there Article III concerns, such as in cases where there just isn't yet a harm that's materialized or it's not concrete enough, whereas here we actually have concrete. But you're confusing the situation in which you're being sued and would like to raise a defense based on the threat of suit with you suing and imagining what people will do in response. I understand. So it's hard to see how we know there's a dispute just because you imagine somebody might say something in response. Usually we say that's hypothetical, conjectural, not concrete. MedImmune makes it clear that at this posture we have to take the facts. The allegation of the complaint is true. Did you allege they would raise this defense? No, but that's a legal question. So what fact is there that suggests the defense is going to be raised? The facts are that there's a concrete copyright harm involving specific copyrights and then the remedy being sought, which I think by the plain language of the Declaratory Judgment Act, is once Article III is satisfied we have a concrete harm, we can ask for the remedy that we want, even if it's partial or incomplete. Suppose you filed this complaint and the court looked at it and says, this looks like a pretty good argument to me. I don't think they have a defense, and it issued the injunctive declaratory relief you wanted, end of case. Yes. What happens then? That would, if the district court agreed with it. Would you then be able to bring a copyright action? No, of course not. By virtue of the rule and the rules expressed on this, the Declaratory Judgment Act says once we receive that remedy, that's a final judgment. So if we showed up the next day and got our, let's say we just asked for the defense, it was granted, and then we showed up and turned around and tried to sue charter again, we would already have a final adjudication. Now you realize what you're saying is you want to be able to bring a D.J. action to strike down a defense that is not being threatened as the time you bring it, and it's a defense in response to a suit that you're intending never to file because it's going to be precluded by your declaratory judgment relief, merger and bar. I would disagree with the second part of that characterization, though. It's not that we don't intend to bring a copyright action. We have brought a copyright action. The only remedy our client is seeking is to define the boundaries between where her copyright rights end to be able to stop people from doing things, and charters claim that they can do whatever they want with her materials online. So we've alleged the facts that they violated her copyright. Your theory of the world is once that is known to them, you assume they'll behave better than they otherwise would. That's the theory? So instead of injunction, there's a thousand things you could have asked. What you want from them is I want you to know that this is no defense as against our rights. If you know that, I trust you'll then behave the way we want you to. And if that turned out not to be true, you've blown it because you asked for the wrong relief. That's your theory of the case. Is that the idea? Yeah, that would be the theory of the case, and it would just be that's the only remedy we want. And I think there's a pragmatic reason for doing that in part, which is if a charter were aware of whether or not it had an immunity or not, then they could make business judgments in its own interest about how best to respond to that. And if they prevailed on the declaration and they were right, then everyone would know that they're right, and they can keep doing what they're doing with the knowledge that their business practices are absolutely fine. And I would just stress that no matter which way the declaration turned out, it would be a final judgment that fully resolves the case because of the controversy between the parties. One problem we would have, how do we know that getting that declaration will do you any good? Usually when we try and think about redressability, we would want some idea that the relief you seek will be helpful to you. One way we'd know that is if we had some reason to think that this defense, if it didn't exist, would affect the behavior of the defendant. We have no basis in the record for thinking that. So it makes it a little hard to see why this is redressing any harm to you. Well, the Declaratory Judgment Act says that once there's an Article III controversy, a court can declare not just the legal rights but also the legal violations. It can when it's all satisfied, but where's the redressability here? Like in MetaMulan, if one party's threatening another with patent litigation, if the other party breaches a contract, it's by stop paying royalties. You've got a concrete adversarial relationship, uncertain issue, and one party at peril if it does anything, so it goes to the court and asks for a DJ. You've got none of that here. I think we have all of that because we have the concrete controversy about that. Not with respect to the defense. There's no controversy over the defense. And you're saying you're not even going to sue for anything other than this? I understand the concerns. I'd just say that we think the plain text of the Declaratory Judgment Act and MetaMulan and the fact that there is no Article III problem here is sufficient for Ms. Foss to be able to elect the remedy that she wants, and that I think would have pragmatic upshot for both sides in resolving what's an unclear dividing line between what Charter thinks it could do with people's copyrights and what they've done with Ms. Foss's copyrights. Thank you. Thank you. Thank you, counsel. At this time, counsel for Marvick can introduce herself on the record to begin. Good morning, Your Honors. May it please the Court, Sarah Christie for the defendants, Marvick, Inc., doing business as Brady Built Sun Rooms, Brady Built, Inc., and John Doe's. Respectfully, I submit that there is an abundance of evidence of prejudice in this particular case. When you say prejudice, I know we use that word in eastern states, but when I read comment N, it just has a heading, unfairness, and then it says estoppel and latches. Yes. And judicial estoppel is a known thing, and it would be strange to read the race judicata limitations as trumping ordinary defenses that could be raised, like judicial estoppel. Stevens could be assimilated to the judicial estoppel doctrine. Are you imagining that there's some free-floating prejudice assessment that doesn't have to meet judicial estoppel or latches? No, Your Honor. I mean, and we would point to- So are you relying on judicial estoppel? I'm relying on the language in comment N about- Comment N says estoppel and latches. Yes. With a heading that says unfairness. Yes. Doesn't use the word prejudice. Yes, Your Honor. So it is judicial estoppel. I'm also- Now, on judicial estoppel, what are the elements of it? Have they been pled? Was there a finding on it? We review judicial estoppel findings for abuse of discretion. So are you saying it would be an abuse of discretion not to find it here, so it's compelled? I would, Your Honor. You don't cite a single judicial estoppel case. On the prejudice grounds, which I understand the Henri Sonas case is Massachusetts law, but in eastern states this court did cite to it with approval. Well, we said that it may, you know, remand, consider it. None of that was addressed here, but I guess I'm just trying to figure out what's the structure of that inquiry. Is there any federal court case that tells me what I'm supposed to be looking at when I do prejudice, and do I do that de novo or what? I would point again to Stebbins. Well, Stebbins, they said that it was an intentional decision to abort a trial after they already had a finding that was adverse on the merits, although they didn't get to judgment on it. So it sounded very much like it was a kind of judicial estoppel-type argument, which is more likely to happen in the context of alternative determinations, because you get an advantage from the non-merits-based ground because you get them to reach the merits-based ground. But here we don't have anything like that. But in Stebbins, Your Honor, though the lower court did reach a merits-based decision on appeal, the Fourth Circuit upheld the decision for- It did, but in explaining why it was granting it, it said it was an intentional decision to abort it after having already gotten a finding on the merits ground. We don't have that here. No, but what we do have here is a sophisticated litigant who has repeatedly filed multiple suits against not only my client but others, including Eastern. We don't look at prejudice about her conduct in other cases. It's in this particular case. Well, Stebbins does note that the plaintiff in that particular instance made something of a career of bringing suits, and this is similar here. And with respect to my client, she instituted a suit in 2018 from work that she claimed she did in 2006. She misrepresented, as you pointed out earlier, the fact that- I didn't say that she misrepresented. I was trying to figure out whether she did. Is there a finding that she did? There is no finding, but what I'm saying- On this record, how would I determine she did? Don't I have to take her complaint as true? Yes. She says she filed before January 19th. She said she applied- Is there anything in the record that shows she lied when she said that? Her subsequent amendment to the complaint- She admits to lying? She doesn't admit to lying, but she admits that she registered, is the term that she used, in February of 2018 after the initial complaint was filed. And does she say she had not made an earlier filing? Because she also registered in February 28th, and then she did it again March 18th when she did a corrected application. So how do I know from this record that she hadn't filed before January 19th? She suggested that she applied. You could have asked for that finding from the district court in the prior case if you thought she had lied, or you could have asked for a prejudice ruling and a termination of that below here. I'm not saying that you're, you know, bad of you not to have done it. I'm just saying it's hard for us on this record. It seems to me a little bit difficult to now reconstruct it and make a finding that she misrepresented something. Well, in this particular instance, this case has been before you before, Your Honor. Not the question of prejudice. Not the question of prejudice, no. But within that decision, this, not this panel, although you were among those that heard the case, but this court concluded that with respect to the decision about whether or not there was an abuse of discretion in not permitting her to withdraw the admissions. Though there wasn't a specific finding made by the court below on that, this court said that the potential prejudice to my client was obvious based on the history of the case, the fact that it had been pending for 22 months, the fact that there had been 15 motions filed, the fact that Marvick had participated materially on merit-based claims related to the pen and state law claims. And I would submit that in this instance, the court can take judicial notice of the docket. With respect to doing that, I could not find in the appendix how you responded to the complaint in the first case. It was she alleged that she had applied. It appears no one is now saying that she, well, whatever. She alleged that she had applied. How did you respond to that in your answer? Did you deny or admit it? I believe we denied it and then we filed a motion to dismiss, Your Honor. Okay. So you knew right at the outset that what she said was false or you thought was false. I'm trying to see how you would then prejudice if you were on to the game early on. Well, Your Honor, going back to 2018, I don't know that we were on to the game necessarily in terms of all we know now. But at that point, what we did know was that she had failed to properly plead the case. So that's why we... I'm sorry. So that's what the motion to dismiss went to. I don't know that at that very moment, we knew that she had made certain representations about when she applied or when she obtained a copyright. All we knew is that she had not pled a property. But I'm trying to get at the bare bones case here. If someone files a copyright claim, they haven't tried to register it or there hasn't been a registration decision. So the defendant is able to move to dismiss and get it thrown out. And that standard scenario, there's no preclusion on a second action. So to have preclusion in the second action, you've got to have some other factor going on in the first case that is sufficient to trigger either a stopple or latches or if you're more ambitious on reading the restatement, some general prejudicial unfairness. I'm trying to get at what is that if you knew right from the get-go that she really was not in a position to pursue a copyright action because she hadn't satisfied a precondition. Again, I mean, we didn't know. Beyond knowing she hadn't satisfied the precondition to file the motion to dismiss, also Fourth Estate hadn't yet been decided at that juncture. I know you can find out if there's a registered copyright with the Copyright Office. Can you find out if someone has applied for a copyright? Because at the time you answered, there was an open issue as to whether applying satisfied the precondition or you needed the decision from the office. Right, exactly. So your motion to dismiss was based on a prescient reading or anticipation of what the Supreme Court held, but wasn't certain at the time. Well, the cases that predated Fourth Estate, they specifically looked to the registration date, if a fee had been paid, several factual components that were not alleged in the complaint at all. I'm trying to get at, did you know she hadn't applied or could you have known she hadn't applied? I'm not certain if you can determine whether or not there's just an application. What makes you think now she hasn't applied? She hadn't applied. Her subsequent application. That was February 18th. Exactly. So the maximum amount of prejudice then would be the prejudice you suffered between January 19th and February 18th. No, Your Honor. From the lie, from the alleged lie, right? No, Your Honor. Because as of that moment, you knew that there was a misrepresentation. But the prejudice, Your Honor, is in having to defend for months on end based on her failure to satisfy the condition precedent and her knowing that she needed to. All I'm trying to do is figure out, is it the misrepresentation that's the source of the prejudice or is it the fact that she didn't comply with what the rule turned out to be in Fourth Estate that's the source of the prejudice? The latter. Okay. If it's just the latter, then doesn't it count somewhat in her favor for a prejudice inquiry that she could have thought Fourth Estate might come out the other way? After all, another party argued to the Supreme Court that it should have. Regardless, her copyright was issued in December of 2019 with an effective date of December of 2018. This was either on the same day or just days after judgment of the entire underlying case was rendered and she took no steps to reopen that case. But why would she need to if she thought that legally she didn't have to include that in the filing? I'm sorry, include that in which filing? To plead a copyright claim. Her thought was up until Fourth Estate was decided, she didn't have to have it registered. It was enough to have applied. So what's the really wrongful conduct there? The wrongful... Well, unfortunately we've not gotten to the merits, Your Honor, but the wrongful conduct is her failing to meet the requirements. But that requirement became clear as to Fourth Estate, right? When was that decided? That was in 20... It was afterwards, I can't recall if it was 21 or... So at the time she was acting, it wasn't evident that she was acting in a way that would not qualify, right? Except for her first statement. Yes. So that's why we're trying to get you back to what prejudice was caused by the first statement, and that's what I'm not hearing you spell out. If you guys kind of knew early on that it wasn't true. No, Your Honor, I do think that our prejudice argument is based on, just as you pointed out, the latter position, that the repeated or the delay in securing the registration, as opposed to while we're pointing out the inconsistencies or what we're characterizing as misrepresentation. That's not your ground for prejudice.  Nothing else, Your Honor? Thank you. I guess before you sit down, is there any case... Well, certainly judicial estoppel can exist in any context. Is there any case finding that for purposes of preclusion, so not a separate defense of laches or judicial estoppel, but that a otherwise non-preclusive judgment can become preclusive for reasons of unfairness that would not meet the test of laches and estoppel? Do we know of any case saying that? I guess that's the closest one, that Massachusetts case. The closest one is that Henri Sono's case. And then Steadman's, depending on how you read it. Right, exactly. And then, obviously, the comment N. Well, comment N says laches and estoppel. Yes. And just one last point on that, Your Honor. My opponent does suggest that comment N only applies to the alternative determinations doctrine, and that's not the case. It refers back to the subsection 2 of section 20. And similarly with Steadman's, that was also not an alternative determinations situation. In their reply brief, they suggested that it was. I guess the only last thing I would like to point out, Your Honor, is Ms. Foss was here with Eastern States a year ago. The case was remanded, and just two weeks ago, it was dismissed again for prejudice-based reasons. And so given the whole of the record and what we submit is likely to occur below, we would ask that you affirm. Thank you. Counsel. Thank you, counsel. At this time, counsel for the appellee, Charter Communications, will please introduce himself on the record again. May it please the Court, Zach Hauenstein for Charter Communications, Inc. and LLC. Charter is an Internet service provider. Charter's only factual connection to this case is that Marvick employees allegedly used Charter's Internet service to email infringing copies of Ms. Foss's brochure. That's it. Against that background, I'd like to make two related points. One is about the merits, and one is about Charter's request for sanctions. On the merits, as this Court has already observed, there is simply no dispute between Foss and Charter about the safe harbor. The only thing Foss saw in her complaint as to Charter was a declaratory judgment that Charter is ineligible for the DMCA safe harbor, which is a defense to a copyright infringement claim. Of course, if there's no controversy, there's no actual controversy about the safe harbor. There's no subject matter jurisdiction over that declaratory judgment claim. Here, it's black-letter law that the facts alleged in Ms. Foss's complaint control that question of whether there's an actual controversy. Here, Foss did not allege in her complaint, her First Amendment complaint, which is where Charter came into the case, Foss did not allege any dispute with Charter about the safe harbor. She did not allege that she communicated with Charter about the safe harbor. She did not allege that Charter said anything to her. Can I just speed you up? Because all that's true, and let's say all that's true, and supports the idea that there's no case of controversies, no Article III. We get to the sanctions question. Their position is that there doesn't need to be any more of a controversy than the filing of the suit under Metamune. If that's wrong, is that sanctionable? How are we supposed to assess the, because essentially what you're saying is it's such an egregiously wrong reading of Metamune, that it's sanctionable, or are you making some other ground for sanctions opposed to that? I think there are additional grounds as well, Your Honor. On the subject of sanctions, Charter is seeking sanctions against Foss' counsel because this is an exceptional case. This Court's case law identifies various different hallmarks of frivolous appeals. And the thing is that this case has virtually all of them. For one, in the Ramirez case, this Court pointed out the inability to set forth facts that support your position. We have that here. We have Foss' failure to allege any dispute. I'm going to say it all runs through the lens of they're making a claim about Metamune. It's a legal claim. On their view of that, of what Metamune requires, they have alleged enough facts, haven't they? I haven't heard you say anything to the contrary of that. You're just saying that can't be right under Metamune, it's so wrong, but is that sanctionable, getting it that wrong? I believe that is independently sanctionable, Your Honor. However, there is also more to that. Because even if you were to assume that there were a dispute between Charter and Foss about the safe harbor, we still have this second layer of a subject matter jurisdiction, which is represented in Calderon and Kaufman, which says that there's no subject matter jurisdiction unless the claim would resolve the party's entire controversy. Now, here, counsel for Foss has suggested that they did plead a copyright infringement claim against Charter, and I would submit that that's simply not true, and it's not a conceivable reading of their complaint. We have a claim against Charter that is very clearly styled as a complaint for construction of the DMCA safe harbor. They didn't ask for a finding or a judgment that Charter committed copyright infringement. The only thing they rely on is a stray allegation in the complaint that Charter's provision of Internet service to MARVC enabled MARVC to commit copyright infringement. But that's not copyright infringement. And I would also submit that if Foss' counsel had... not enough to have sought a different remedy for copyright infringement, that allegation, what's missing from that? Well, what you would have to do is, in addition to that... Well, number one, I would submit that that allegation standing alone, that if Charter had looked at that complaint and believed that it actually purported to assert a copyright infringement claim, Charter would have raised that separately as a Rule 11 issue because if you accept that basic notion, what that would mean would be that each time someone sends an email with copyrighted content, that the Internet service provider is liable for copyright infringement. And there's no authority whatsoever for that proposition. And the reason we're here now seeking sanctions is that we pointed this out to Foss' counsel at the very inception of this case. And we've detailed this in our papers, but we have a long pattern of conduct in which each time we pointed that out, they represented, we're going to amend. We're going to fix this. They told us that unequivocally. It's in the record. They told the district court that unequivocally. It's also in the record. They accused Charter of wasting the court's time with a motion to dismiss because they were going to amend and they were going to cure all of these issues. They never did. And then we come to this appeal. Once they filed a notice of appeal, we warned them, there's no basis for this appeal. We're going to seek sanctions against counsel if you pursue it. They pursued it anyway. And then in their opening brief, Foss' counsel told this court that they would be bringing a motion to amend here to fix the jurisdictional allegations, and they didn't do that either. So those are additional indicia of frivolousness, which add to this whole package of why Charter is now here seeking sanctions. I mean, the rules against frivolous appeals exist to protect both litigants and this court from having to deal with issues that don't need to be decided. And that protection is only meaningful and only really exists if those rules are actually enforced. And that is why, regrettably, we had to file a motion for sanctions and we asked the court to issue the relief that we requested. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, counsel for the appellant has a three-minute rebuttal. Please reintroduce yourself on the record to begin. Thank you, Your Honors. Gregory Keenan for appellant. Regarding the preclusive effect, we do think that comment N is referring to specific provisions and clarifying that the general rule that you could refile after correcting doesn't displace other defenses such as lackeys, but it's not establishing some free-roaming prejudice exception. And we would also say that reading comment N in its full context, which is section 20 itself, the comments below, and specifically comment D, which cabins comment N, talks about its effects, we don't think that there's some free-floating prejudice exception. And if there were, I think Costello in Rule 41 would present problems for such an approach. Regarding the sanctions motion, I stand by the fact that after researching as thoroughly as we could and reading to the best of our ability the cases, we read MedImmune to endorse the type of use of declaratory judgment that we tried to use here. We also think that it would even satisfy Justice Thomas' more stringent reading that's in the dissent of MedImmune because the claims Has any court applied MedImmune to give the okay to bring a D.J. action to disguise a controversy that has never even been discussed or raised by the parties before the suit was filed? To my knowledge, no, but just two points on that. I think when it's talking about case or controversy, it's talking about the factual basis for whether or not the claims have accrued. So that they didn't assert a legal theory or a legal defense. I would just say the case for controversy is the facts that establish a predicate for the copyright infringement claim that the complaint. Do you want to address your opponent's point about if that's the copyright claim, that sentence regarding charter's infringement by the assistance it supposedly gave and that the history of whether you were going to amend to build that out and then the no amendment ever occurred? Yeah. The more research we did, the more confident we were. It's in the record, I think, but he sent us a Rule 11 letter. It cited without so indicating Justice Thomas' dissent as the basis for why we were wrong. So we re-read MedImmune thinking we had misread it. We realized the Rule 11 letter was citing a dissent. We discovered Shelby v. Johnson, a Supreme Court case that explained that factual pleadings rather than legal stylings were enough to state a claim. We felt confident in our view. And so I'd also just stress that the sanctions motion didn't even address MedImmune. And through those communications, he was aware that, if I could just finish the thought, we had made clear repeatedly both in our briefing and private communications we thought MedImmune was the basis to give a standing. So while the parties do disagree about how to read MedImmune, we would argue it's not sanctionably wrong. And then if we could just make one final point very quickly as to sanctions. Even if they're right about Article III, there would still be a non-frivolous basis for the appeal because the district court simultaneously held it didn't have jurisdiction and then also granted a 12B6 motion on the merits. So one reason to appeal as to charter is to at least, if they're right on Article III and they're reading of MedImmune in the case law, to vacate the 12B6 aspect, which charter in its brief says it's fine with, it would agree to as long as the 12B1 is granted that 12B6 should be vacated or could be vacated. So respectfully, we don't think that the appeal is frivolous or sanctionable. Thank you. Thank you very much. Thank you, counsel. That concludes argument in this case.